IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

TRAVIS WADE,

                Plaintiff,          Case No. 3:01 CV 7229

  -vs-

                                         MEMORANDUM   OPINION

DIAMANT BOART, INC.,

                Defendant.

KATZ, J.

This matter is before the Court on the motion of Defendant Diamant Boart, Inc. ("Diamant Boart") for summary judgment (Doc. No. 124), to which Plaintiff has filed a Response (Doc. No. 146), and Defendant, a Reply (Doc. No. 162). Also before the Court are Plaintiff's Motion to Strike Defendant's Supplemental Initial Disclosure of Expert Witness (Doc. No. 136), to which Defendant has filed a Response (Doc. No. 137), and Plaintiff has filed a Reply (Doc. No. 138), and Defendant's Motion to Preclude Use of Affidavit and/or Opinions and Testimony of Plaintiff's Liability Witness at Trial (Doc. No. 164). This Court has jurisdiction under 28 U.S.C. § 1332. For the reasons that follow, Defendant's Motion for Summary Judgment is granted. Plaintiff's Motion to Strike and Defendant's Motion to Preclude are denied as moot.

## BACKGROUND

In 1995, Plaintiff Travis Wade started working as a concrete cutter for Concrete Cutting and Coring Services ("CCCS"), which is owned by Plaintiff's half-brother Brad Wade. Brad Wade taught Plaintiff how to maintain and grease the Cushion Cut 65 and Cushion Cut 35 concrete cutting saws the company used at the time, and Plaintiff eventually became the

designated trainer of new employees. Brad Wade told Plaintiff to grease the bearings on the saws' arbor shafts with the engine running and the saw blade turning. This became Plaintiff's practice.

CCCS bought a Quanta Q1200 walk-behind concrete cutting saw ("the Quanta") from its manufacturer, Defendant Diamant Boart, in 1996. The saw came with a warning decal on the operator's console, which is directly in front of the operator as he or she uses the saw. On the decal, the word "WARNING" first appears, in large, black, capital letters, between two triangles containing exclamation points, all set on a red or orange background. (Doc. No. 124, ex. 1, p.1). Below that in black, capital letters, the decal states, "Failure to follow the warnings and instructions below may result in serious injury or death." *Id*. The decal then contains a list of admonishments, including: "Read entire operator's manual before operating this machine. Understand all warnings, instructions, and controls. If you do not have an operator's manual, call toll free . . ."; "Machinery Hazard - Always keep all guards in place and in good condition. Always keep all parts of your body away from blade and all other moving parts"; and "Never operate this machine with the engine hood removed." *Id*.

The Quanta also came with an operator's manual ("the manual"). The manual states on the table of contents page, in capital letters next to a triangle containing an exclamation point, "Operators of this equipment must read and be familiar with the safety warnings. Failure to obey warnings may result in injury or death." (Doc. No. 28, Ex. I, p. 2). The table of contents indicates that "safety warnings" appear on pages eight and nine, and that "maintenance" instructions appear on pages twenty-eight and twenty-nine, though they actually appear on pages twenty-five and twenty-six. *Id*. at 2, 25-26.

Page eight of the manual states, at the top, in capital letters, "Safety First!" *Id*. at 8. Below that, in a box and flanked by two triangles with exclamation points in them, are the words

2

"Warning Do's and Do Not's." *Id*. Below that, in capital letters, the manual states "Warning: Failure to comply with these warnings and operating instructions could result in death or serious bodily injury." *Id*. The listed "do's" and "do not's" include, "DO read this entire operator's manual before operating this machine. Understand all warnings, instructions and controls. . . . DO keep all parts of your body away from the blade and all other moving parts. . . . DO establish a training program for all operators of this machine. . . . DO NOT operate this machine unless you have read and understood this operator's manual. . . . DO NOT operate this machine without the blade guard or other protective guards in place. . . . DO NOT work on this machine while the engine is running." *Id*. at p. 8-9. (Emphasis added).

On page seventeen of the manual, under the heading "Scheduled Maintenance Quick Reference," is a triangle containing an exclamation point and the warning: "ALWAYS park the machine on a level surface with the engine 'OFF' and the ignition switch set in the 'OFF' position before performing any maintenance." *Id*. at 17. On page twenty-five, under the heading "Maintenance," the manual reiterates this warning: "Before performing any maintenance, ALWAYS park the machine on a level surface with the Engine OFF and the Engine Start Switch in the "OFF" position." *Id*. at 25. Immediately below this the manual describes the frequency and method of lubricating the bearings, including the blade shaft bearings. *Id*.

While Plaintiff read the warnings on the Quanta's operator console, including the instruction to read the entire operator's manual before using the machine, neither Plaintiff nor Brad Wade ever read the operator's manual, and no one trained Plaintiff on the proper maintenance of the Quanta. Plaintiff's method of lubricating the Quanta's arbor shaft bearings, a task he preformed daily, was to start the engine, open the engine hood, which folded open on hinges, climb into the hood and kneel on the inside of the hood grate, reach into the engine

3

compartment while the engine was running, and grease the bearings using a grease gun. Plaintiff had just finished greasing the bearings in this manner on May 10, 1999, and was replacing a cap on the right side grease reservoir, moving slowly because there was a moving belt inches from his hand, when his hand or glove got caught in the belt. The belt drew Plaintiff's hand into the moving machinery, severing it.

At the Plaintiff's deposition, Defense counsel showed him a copy of the Quanta manual, which Plaintiff acknowledged was available in the CCCS office for him to read. Plaintiff acknowledged that the manual instructed users of the Quanta to lubricate the blade shaft bearings with the engine off, and warned them that failure to do so could result in death or serious injury. Finally, Plaintiff acknowledged that if he had turned off the engine before greasing the bearings, his injury would not have occurred.

Plaintiff claims the Quanta was defectively designed and that Diamant Boart failed to adequately warn Plaintiff of the dangers posed by the moving belts. Plaintiff has sued Diamant Boart on theories of breach of implied warranty, strict liability in tort, violation of Ohio's product liability statute, and negligence. Plaintiff also seeks exemplary and punitive damages. Defendant moves for summary on Plaintiff's claims on the grounds that the Quanta is not defective in design, that its warnings were adequate, that any defect in the Quanta or negligence by Diamant Boart did not proximately cause of Plaintiff's injuries, and that Plaintiff assumed the risk of injury. Diamant Boart also argues that it did not show a flagrant disregard for Plaintiff's safety and that punitive damages are therefore inappropriate.

## DISCUSSION

*A.    Summary Judgment Standard*

Summary judgment is appropriate where "the pleadings, depositions, answers to

4

interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2541, 91 L. Ed. 2d 202 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

"In considering a motion for summary judgment, the Court must view the facts and draw

all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

  *B.  Plaintiff's Causes of Action*

Plaintiff alleges that Diamant Boart defectively designed the Quanta by failing to cover the moving belts with a guard, and failed to adequately warn users of the dangers the belts posed. Plaintiff claims Diamant Board breached the implied warranty of safety, is strictly liable in tort under Ohio cases adopting Section 402A of the Restatement 2d of Torts, violated Ohio's product liability statute, and committed negligence.

A plaintiff demonstrates that a product manufacturer breached Ohio's implied warranty of safety by showing: (1) that there was a defect in the product manufactured and sold by the defendant; (2) that the defect existed when the product was sold; (3) "that the defect was the direct and proximate cause of plaintiff's injuries"; (4) and that when the plaintiff was injured, he was in a place reasonably to be anticipated by the defendant. *Lonzrick v. Republic Steel Corp.*, 218

N.E.2d 185, 188 (Ohio 1966). In *Temple v. Wean United, Inc.*, the Ohio Supreme Court adopted Section 402A of the Restatement of Torts 2d and its illustrative comments, holding that "there are virtually no distinctions between Ohio's 'implied warranty in tort' theory and the Restatement version of strict liability in tort." *Temple*, 364 N.E.2d 267, 271 (Ohio 1977).

A product manufacturer is liable under Ohio's product liability statute if the plaintiff establishes that:

> [T]he product in question was defective in manufacture or construction[,] . . . was defective in design or formulation[,] . . . was defective due to inadequate warning or instruction[,] . . . or was defective because it did not conform to a representation made by its manufacturer [and] . . .
>
> A defective aspect of the product in question . . . was a proximate cause of harm for which the claimant seeks to recover compensatory damages.

Ohio Rev. Code § 2307.73(A).

Finally, "[i]n order to recover in an action for products liability based upon negligence, a plaintiff must show that the defendant owed him a duty, that the duty was breached and that the injury proximately resulted from the breach." *Freas v. Prater Constr. Corp.*, 573 N.E.2d 27, 30 (Ohio 1991).

  *C.*  *Proximate Cause*

Multiple Ohio courts have held that where a plaintiff fails to read and/or follow clear instructions and where the accident would not have happened had the plaintiff followed the instructions, the plaintiff's strict products liability and negligence claims will fail for lack of the requisite proximate cause. *See Freas*, 573 N.E.2d at 31-32; *Sheets v. Schmidt & Assocs., Inc.*, No. C-020726, 2003 Ohio App. LEXIS 2877, at *7-8, 13, 19 (June 20, 2003) (citing to *Richards v. C. Schmidt Co.*, 561 N.E.2d 569, 571-72 (Ohio Ct. App. 1989) and *Lewis v. Clark Equip. Co.*, No. C-020271, 2003 Ohio App. LEXIS 1476, at *6 (Mar. 28, 2003)); *see also Mohney v. USA Hockey,*

7

*Inc.*, 300 F. Supp. 2d 556, 578 (N.D. Ohio 2004) (citing to *Hisrich v. Volvo Cars of N. Am.*, 226 F.3d 445, 451-53 (6th Cir. 2000) and *Phan v. Presrite Corp.*, 653 N.E.2d 708, 711 (Ohio Ct. App. 1994)).

In *Freas*, the plaintiff's decedent was killed while dismantling a crane in the course of his employment. The boom fell on the decedent as he stood underneath it, pounding out pins that held the boom together. *Freas*, 573 N.E.2d at 28-29. While no safety warnings appeared on the crane itself, the crane's instruction manual provided, at pages 602 through 608, safety warnings regarding disassembly of the boom. *Id*. at 28, 31. The manual, which the decedent had read, warned that incorrectly disassembling the boom could result in serious injury or death and that no one should ever stand under the boom while removing the connecting pins. *Id*. at 31. The warnings were in boldface type and were preceded by exclamation marks. *Id*. The manual also instructed users that the proper method of dismantling the crane where pins had been inappropriately installed with their heads facing the outside of the boom was to pound the pins out from the opposite side of the crane using a long steel bar. *Id*. at 29.

The Ohio Supreme Court held that the trial court correctly granted summary judgment on the plaintiff's claims of inadequate warning and defective design. The court cited to Comment *j* to Section 402A, which provides:

> In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use. . . .
> . . . .
> Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous.

Restatement (Second) of Torts § 402A, cmt. j; *Freas*, 573 N.E.2d at 30-31. The court then found that, as to the failure to warn claim, the warnings in the manual were "clear and caution that an

operator, and others, should never stand underneath the boom. The warnings are readable, conspicuous and understandable . . . . Indeed, the warnings in the manual were adequate and reasonably calculated to apprise [the decedent] of the crane's dangerous propensities." *Freas*, 573 N.E.2d at 31. The court concluded that "neither the content of the warnings nor the lack of warnings on the boom itself can be said to have caused [the decedent's] death." *Id*.

As to the claim that the crane was defectively designed because it used pins with heads that, if installed with the heads facing out, could not be pounded out toward the center of the boom from the outside, the court noted that the decedent had read the manual and that the manual explained the proper procedure for removing improperly installed headed pins, then concluded:

> We believe that the instructions and warnings contained in the manual effectively communicated information which would have enabled [the decedent] to disassemble the boom safely. Accordingly, we conclude, after construing the evidence most favorably to appellant, the evidence in this particular case fails to establish the necessary element of proximate cause for appellant's strict liability claim.

*Id*. at 31-31.[1]

In *Sheets*, the plaintiff's job was to load and operate a cardboard baler. *Sheets*, 2003 Ohio App. LEXIS at *3. The baler had printed warnings on it instructing users to lock-out/tag-out the machine (i.e., disconnect the power by turning a key) before performing any maintenance, and cautioning that the baler's moving parts posed a risk of serious injury or death. *Id*. at *3-4. The plaintiff had read the warnings but had not read the baler's manual, though the manual stated that

---

[1] Though the Ohio Supreme Court in *Freas* limited the case to its facts, the court's concern was that its holding not be construed to stand for the proposition that warnings in a manual alone, in the absence of warnings on the actual product, will automatically exculpate a manufacturer. *Freas*, 573 N.E.2d at 32. The Court noted "there are, and will be, many situations that require a manufacturer to supply warnings on the product itself as well as in an instruction manual." *Id*.

9

it was required reading for all operators. *Id*. at 4. The manual also warned users to lock-out/tag-out the machine before performing maintenance and warned them not to overload the machine's hopper. *Id*. When the baler became jammed because the hopper was overloaded, the plaintiff turned the machine off but did not lock-out/tag-out, because the key was broken. *Id*. at 4-5. The plaintiff then stood on a conveyor belt and tried to clear the jam with a pole. *Id*. at 5. The plaintiff fell forward into the hopper, and when he stood up, the baler activated and crushed his legs. *Id*. The plaintiff sued the manufacturers of the baler and the conveyer belt under theories of products liability, negligence, and breach of warranty. *Id*.

The Ohio Court of Appeals noted that even the plaintiff's expert had agreed that had plaintiff followed the lock-out/tag-out procedure, he would not have been injured. *Id*. at 7. The court therefore determined that the plaintiff's "misuse of the machine [was] the direct and proximate cause of his injuries." *Id*. In considering the plaintiff's failure to warn claim, the court explained:

> [T]he baler contained numerous warnings that it could cause severe injury. These included an explicit warning that the inside of the baler was a crush zone to be avoided while the machine's power supply was connected. Sheets testified that he had read and understood the warnings. As we have already noted, it was Sheets's failure to heed the lock-out/tag-out directive that had ultimately caused his injuries, and Sheets has failed to explain how more extensive or explicit warnings would have prevented his loss. His argument that AMBACO should have provided more information on clearing jams ignores the fact that the lock-out/tag-out procedure was a required part of any maintenance on the machine.

*Id*. at 12-13. The court found that the trial court properly granted summary judgment on all of the plaintiff's claims. *Id*. at 19. In support of its conclusion that the plaintiff's failure to follow the instruction to lock-out/tag-out the machine before performing maintenance was the proximate cause of his injuries, *Sheets* cited to *Lewis v. Clark Equipment Co.* and *Richards v. C. Schmidt Co.*

10

In *Lewis*, the plaintiff was injured when the brakes on the forklift she was driving failed and the forklift crushed her foot, which was outside the vehicle, against a wall. *Lewis*, 2003 Ohio App. LEXIS 1476 at *3-4. There were numerous warnings on the forklift itself cautioning users to keep their feet inside the operator's compartment. *Id*. at 5. Additionally, the manufacturer had provided to the forklift owner's service provider a manual with specific instructions on periodically adjusting the forklift's non-self-adjusting brakes. *Id*. at 4. The service provider's mechanic, however, never read the manual, and instead developed his own operational check for the brakes that did not include the required adjustments. *Id*. at 5.

The trial court directed a verdict in favor of the manufacturer on the plaintiff's defective design and inadequate warning claims. *Id*. at 2, 6. The court concluded that the mechanic had not followed the manufacturer's instructions, and that the plaintiff's own expert had stated that if the mechanic had, the accident would not have happened. *Id*. at 6. The court also noted the plaintiff's own failure to "read and/or heed the warnings provided on and with the forklift," and that it was undisputed that if she had, the accident would not have happened. *Id*. The trial court found the claims against the manufacturer without merit, in the words of the appellate court, "from the standpoint of proximate cause." *Id*. at 6, 9. The appellate court found that the manufacturer's delivery of the manual to the mechanic and not the owner did not alter this outcome. *Id*. at 11-12.

In *Richards*, the plaintiff used hazardous chemicals to clean his face and body, despite the facts that the bottles warned users to avoid contact with their skin and that the chemicals burned his skin. *Richards*, 561 N.E.2d at 571-72. The plaintiff washed with the chemicals because his coworkers did and because his employer encouraged him to use them. *Id*. The Ohio Court of Appeals held that, as to the plaintiff's inadequate warning claim, the plaintiff:

11

> [S]tated that he read and understood the warnings, but that he ignored them. [The Plaintiff] improperly used the chemicals to clean himself after work even though he read the warnings cautioning against repeated contact with skin. That improper use, contrary to clear warnings, removed the existence of any genuine issue of material fact relative to the alleged failure to warn.

*Id*. at 572 (citing *Calvert Fire Ins. Co. V. Fyr-Fyter Sales & Service*, 425 N.E.2d 910 (Ohio Ct. App. 1979)).

Finally, this Court, in *Mohney*, noted Ohio's presumption, benefitting the manufacturer, that an adequate warning will be read and heeded, and the rebuttable presumption, benefitting the plaintiff, that an inadequate warning was the proximate cause of the plaintiff's choice to use the product. *Mohney*, 300 F. Supp. 2d at 578 (citing to *Seley v. G.D. Searle Co.*, 423 N.E.2d 831, 838). The plaintiff in *Mohney* was injured when his hockey helmet and the attached mask failed to protect his neck. *Id*. at 558-59. The evidence showed that the plaintiff had not read warnings printed on the rear of the helmet. *Id*. at 578-79. This Court held that:

> Even assuming arguendo that the warnings in this case, including that on the back of the helmet, were inadequate, the presumption of proximate cause is rebutted, and a claim of a failure to warn fails where the evidence directly establishes that a plaintiff did not read the warnings.

*Id*. at 578 (citing *Hisrich*, 226 F.3d at 451). Hisrich noted: "Ohio courts have found that when evidence shows the plaintiff failed to read instructions, proximate cause is rebutted." *Hisrich*, 226 F.3d at 451 (citing *Phan*, 653 N.E.2d at 711). *Phan* found that even if the defendant had given additional warnings, they would not have prevented the plaintiff's injuries because no one read the warnings, and therefore held that the plaintiff "had presented no evidence that the alleged inadequacy of the warning was the proximate cause of [plaintiff's] injuries." *Phan*, 653 N.E.2d at 711.

In this case, as in the above-cited cases, the Court finds that the undisputed facts

12

demonstrate that the failure of Plaintiff and/or his brother Brad Wade to read and/or follow the instructions on the Quanta and in its manual was the proximate cause of Plaintiff's injuries, not any design defect or any inadequacy in the warnings. Plaintiff has admitted that, had he heeded the instruction to turn off the saw before lubricating the bearings, this most unfortunate accident would not have occurred.

Specifically, as to Plaintiff's claim that the Quanta was defectively designed because it failed to include a guard, the Court finds that, as in *Freas*, *Sheets*, and *Lewis*, the warnings on the Quanta were clear that one should never operate the machine with the engine cover off, work near moving parts, or use the machine without having read the instructions in the manual. Plaintiff failed to follow all of these warnings. Plaintiff also failed to read and follow the manual's instructions for lubricating the bearings, which required him to turn off the engine before performing maintenance. The instructions and warnings in the manual were no less clear nor more "buried" than those in *Freas*, and in this case, unlike in *Freas*, the manufacturer included warnings on the actual product, including one stating that failure to read the entire manual before using the machine could lead to serious injury. The warnings and instructions here were "readable, conspicuous, and understandable" and, as in *Freas*, *Sheets*, *and Lewis*, if followed, would have enabled Plaintiff to perform his job task safely and would have obviated the need for a belt-guard or other change in design.

As to Plaintiff's claim that Diamant Boart did not include adequate warnings with the Quanta, the Court first holds that, as in *Lewis*, *Mohney*, and *Phan*, any inadequacies in the manual did not proximately cause Plaintiff's injuries, due to Plaintiff's admitted failure to read it (despite the prominent warning on the operator's console that using the machine without reading the manual could cause serious injury). As to the warnings on the saw itself, which referred users to

13

the manual and warned them not to place body parts near moving machinery and never to operate the machine with the engine hood removed, it is undisputed that, as in *Richards* and *Sheets*, Plaintiff read and understood the warnings, but ignored them. Had Plaintiff followed the instructions on the Quanta and read the manual, and followed the lubrication instructions therein, by his own admission he would not have been injured. As in *Richards* and *Sheets*, therefore, Plaintiff's claims based on failure to warn must fail.

Under circumstances such as those in this case, Ohio courts consistently hold that a plaintiff's failure to read and/or follow the manufacturer's instructions was the proximate cause of his injuries, and that the plaintiff's design defect and failure to adequately warn claims must therefore fail. The Court so holds here.

    C.    *Punitive Damages*

Because the Court finds that Plaintiff may recover no compensatory damages, his claim for punitive damages also must fail. *Malone v. Courtyard by Marriott Ltd. P'ship*, 659 N.E.2d 1242, 1248 (Ohio 1996) (holding that a court may not award punitive damages where the plaintiff recovers no compensatory damages); Ohio Rev. Code § 2307.80(A) (hinging awards of punitive damages on the plaintiff's entitlement to compensatory damages).

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. No. 124) is granted. Plaintiff's Motion to Strike (Doc. No. 136) and Defendant's Motion to Preclude (Doc. No. 164) are denied as moot.

    IT IS SO ORDERED.

                                                                   s/ *David A. Katz*
                                                                  DAVID A. KATZ
                                                                  SENIOR U. S. DISTRICT JUDGE