IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

TRAVIS WADE,

                Plaintiff,         Case No. 3:01 CV 7229

   -vs-

                                                MEMORANDUM OPINION

DIAMANT BOART, INC.,

                Defendant.

KATZ, J.

This matter is before the Court on the defendant's motion for summary judgment (Doc. 180), and the plaintiff's cross-motion for summary judgment with regard to the defense of assumption of risk. This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

**I. Facts**

In 1995, Plaintiff Travis Wade started working as a concrete cutter for Concrete Cutting and Coring Services ("CCCS"), which is owned by Plaintiff's half-brother Brad Wade. Brad Wade taught Plaintiff how to maintain and grease the Cushion Cut 65 and Cushion Cut 35 concrete cutting saws the company used at the time, and Plaintiff eventually became the designated trainer of new employees. Brad Wade told Plaintiff to grease the bearings on the saws' arbor shafts with the engine running and the saw blade turning. This became Plaintiff's practice.

CCCS bought a Quanta Q1200 walk-behind concrete cutting saw ("the Quanta") from the manufacturer, Defendant Diamant Boart, in 1996. The saw came with a warning decal on the operator's console, which is directly in front of the operator as he or she uses the saw. On the decal, the word "WARNING" first appears, in large, black, capital letters, between two triangles containing

exclamation points, all set on a red or orange background. It also bore a notice that "Failure to follow the warnings and instructions below may result in serious injury or death" and a list of other admonishments, including, "Read entire operator's manual before operating this machine. . . ." Doc. 124, ex. 1, p.1. The Quanta also came with an operator's manual ("the manual") that stated, "Operators of this equipment must read and be familiar with the safety warnings. Failure to obey warnings may result in injury or death." Doc. 28, Ex. I, p. 2. The table of contents indicates maintenance instructions appear on pages twenty-eight and twenty-nine, though they actually appear on pages twenty-five and twenty-six. *Id.* at 2, 25-26.

Page eight of the manual states, at the top, in capital letters, "Safety First!" *Id.* at 8. Other warnings include: "DO keep all parts of your body away from the blade and all other moving parts," "DO NOT operate this machine unless you have read and understood this operator's manual," "DO NOT operate this machine without the blade guard or other protective guards in place," and "DO NOT work on this machine while the engine is running." *Id*. at p. 8-9.

While Plaintiff read the warnings on the Quanta's operator console, neither Plaintiff nor Brad Wade read the operator's manual. Plaintiff's method of lubricating the Quanta's arbor shaft bearings, a task he preformed daily, was to start the engine, open the engine hood, which folded open on hinges, climb into the hood and kneel on the inside of the hood grate, reach into the engine compartment while the engine was running, and grease the bearings using a grease gun. Plaintiff had just finished greasing the bearings in this manner on May 10, 1999, and was replacing a cap on the right side grease reservoir, moving slowly because there was a moving belt inches from his hand, when his hand or glove became caught in the belt. The belt drew Plaintiff's hand into the moving machinery, severing it.

Plaintiff acknowledges that the manual instructed users of the Quanta to lubricate the blade shaft bearings with the engine off and warned them that failure to do so could result in death or serious injury. Plaintiff also acknowledges that if he had turned off the engine before greasing the bearings, his injury would not have occurred.

**II. Procedural History**

This Court granted summary judgment in favor of Defendant on its claim for defective design on the basis that Plaintiff could not establish proximate causation between the alleged design defect and the injury because he and his employer had failed to read the manual as instructed by the warnings on the Quanta, and following the manual's instructions would have prevented the underlying injury.[1] *Wade v. Diamant Boart*, 374 F. Supp. 2d 586 (N.D. Ohio 2005). A panel of the Sixth Circuit reversed this Court's ruling that Plaintiff had not "established a genuine issue of material fact on the proximate cause element of his design defect claim," and remanded the case to this Court to determine "whether Plaintiff demonstrated a genuine issue of fact regarding the other elements of his design defect claim [and] whether Diamant Boart was entitled to summary judgment on the design defect claim on the basis of its affirmative defense of assumption of the risk." *Wade v. Diamant Boart*, 179 Fed. App'x 352, 358 (6th Cir. 2006).

---

[1] There was also a failure to warn claim in the original complaint that Plaintiff has since abandoned. *Wade*, 179 Fed.Appx. 356, n.1.

**III. Discussion**

This Court will evaluate whether Wade has established a genuine issue of material fact with regard to the other elements of his design defect claim and whether Diamant Boart's assumption of the risk defense warrants summary judgment.

**A. Design Defect Claim**

"Ohio law authorizes recovery for injuries incurred as a result of a defectively designed product." *Miller v. Uniroyal Technology Corp.*, 35 Fed. App'x 216, 222 (6th Cir.2002) (citing Ohio Rev. Code § 2307.75(A)).

A product manufacturer is liable under Ohio's product liability statute if the plaintiff establishes that:

> [T]he product in question was defective in manufacture or construction[,] . . . was defective in design or formulation[,] . . . was defective due to inadequate warning or instruction[,] . . . or was defective because it did not conform to a representation made by its manufacturer [and] . . . [a] defective aspect of the product in question . . . was a proximate cause of harm for which the claimant seeks to recover compensatory damages.

Ohio Rev. Code § 2307.73(A).

Courts have interpreted the law as follows: a plaintiff demonstrates that a product manufacturer breached Ohio's implied warranty of safety by showing: (1) that there was a defect in the product manufactured and sold by the defendant; (2) that the defect existed when the product was sold; (3) that the defect was the direct and proximate cause of the plaintiff's injuries; (4) and that when the plaintiff was injured, he was in a place reasonably to be anticipated by the defendant. *See Lonzrick v. Republic Steel Corp.*, 6 Ohio St.2d 227 (1966). In *Temple v. Wean United, Inc.*, the

Ohio Supreme Court adopted Section 402A of the Restatement of Torts 2d and its illustrative comments, holding that "there are virtually no distinctions between Ohio's 'implied warranty in tort' theory and the Restatement version of strict liability in tort." *Temple*, 50 Ohio St. 2d 317, 322 (1977).

Other courts have stated the standard slightly differently: to establish a design defect claim, a plaintiff must prove by a preponderance of the evidence that (1) the product manufactured and sold by the defendant had a design defect, (2) this defect existed at the time the product left the control of the manufacturer, and (3) the defect was the proximate cause of the injury for which recovery is sought. *Id.* at 321 (citing *State Farm Fire & Casualty Co. v. Chrysler Corp.*, 37 Ohio St. 3d 1 (1988)); *see also Gumnitsky v. Delta Inern. Machinery Corp.*, 411 F. Supp. 2d 756, 762 (N.D. Ohio 2005). "A product is defective in design if (1) the foreseeable risks of the design exceed the benefits, or (2) the product is more dangerous than an ordinary consumer would expect when used in a reasonably foreseeable way." *Gumnitsky*, 411 F. Supp. 2d at 762 (quoting *Clay*, 215 F.3d at 669 (citing Ohio Rev. Code § 2307.75(A))).

"In order to recover in an action for products liability based upon negligence, a plaintiff must show that the defendant owed him a duty, that the duty was breached and that the injury proximately resulted from the breach." *Freas v. Prater Constr. Corp.*, 60 Ohio St. 3d 6, 8-9 (1991).

> In Ohio, the contrast between negligence and strict liability in products liability cases is distinct. See *Bowling v. Heil Co.* (1987), 31 Ohio St.3d 277, 31 OBR 559, 511 N.E.2d 373, and *Onderko v. Richmond Mfg. Co.* (1987), 31 Ohio St.3d 296, 31 OBR 576, 511 N.E.2d 388. In a products case based on strict liability, the focus is solely on the defective condition of the product and not, as in an action premised on negligence, on what the defendant knew or should have known of the defect which caused the injury. *Id.* at 301, 31 OBR at 579-580, 511 N.E.2d at 392.

*McFarland v. Bruno Mach. Corp.*, 68 Ohio St. 3d 305, 308 (1994).

In *Knitz v. Minster Machine Co.*, heavily relied on by the Circuit's opinion in this case, the Ohio Supreme Court held that the plaintiff demonstrated genuine issues of material fact by introducing evidence that the foot pedal control on the defendant's punch press model was defective because it allowed "accidental tripping" and "fail[ed] to provide a point of operation guard when the foot pedal is operative." 60 Ohio St. 2d 460, 467 (1982).

Here, Wade has introduced evidence that (1) the Quanta model at issue was manufactured without a fixed metal bolt-on belt guard to protect accidental contact with the in-running nip of the blade shaft drive belt and pulley, (2) previous and subsequent concrete saw models were manufactured with a fixed belt guard over the belt and pulley, and (3) several safety standards and codes recommended the placement of belt guards over the belt-and-pulley nip point. He has further introduced evidence that the guard could have been placed on the Quanta by the manufacturer for as little as six dollars. Under *Knitz* and other authorities cited above, this evidence establishes genuine issues of material fact as to whether the Quanta was defective. Diamant Boart does not dispute that it manufactured and sold the Quanta without the belt guard. The Sixth Circuit has already made a finding on proximate cause, as described above. Therefore, Defendant manufacturer Diamant Boart is unable to demonstrate the absence of genuine issues of material fact on any element of Plaintiff Wade's design defect claim, and summary judgment is accordingly hereby denied on that claim.

Defendant's attempt to argue "misuse" as a defense to the design defect claim is misplaced. The law of this case, as set forth by the Sixth Circuit in *Diamant Boart*, supra, the Ohio Supreme Court in *Knitz*, supra, and other supporting caselaw, is that Plaintiff's alleged "misuse" does not constitute a defense to the strict liability design defect claim, because it does not negate the

6

proximate cause element of the claim and because Plaintiff was not using the Quanta in an unreasonable or unforeseeable manner. *Cf. Menifee v. Ohio Welding Products, Inc.*, 15 Ohio St. 3d 75, 78 (1984) (air compressor designed to generate power for air tools was used unforeseeably for breathing purposes); *Chaplynski v. Van Holle*, 1992 Ohio App. LEXIS 1929 (12th Dist. 1992) (child removing mole trap from neighbor's yard and placing it on front porch was not foreseeable use). There is no evidence that Plaintiff Wade used the Quanta for any purpose that deviated from its intended and foreseeable use.

### B. Assumption of Risk

Plaintiff has moved for partial summary judgment on the issue of assumption of risk. Plaintiff argues that Ohio has abolished the assumption of the risk defense in the context of employees making design defect claims. Defendant argues that the defense is still applicable in Ohio and in this case, and it serves to absolve Diamant Boart of liability for design defect.

The Ohio Supreme Court, in 1991, held that "the time has come for Ohio to realize that the days of laissez-faire economics are long gone," concluding essentially that an employee must be allowed to assume the risk associated with his or her employment without sacrificing his or her ability to sue the manufacturer of a defective product – otherwise the employee is forced to choose between losing his or her job or losing his or her legal rights. *Cremeans v. Willmar Henderson Mfg. Co.*, 57 Ohio St. 3d 145, 147 (1991). The court abolished the defense of assumption of the risk. *Id.* Justice Brown filed an opinion concurring in the judgment and opining that "[t]he focus should not be directed to the setting where the injury occurs, but to whether the employee has voluntarily assumed the risk of using the defective product." *Id.* at 152 (Brown, J., concurring). "In employment situations, there will be cases where the employee has elected to use a defective product

7

and those where the use of a defective product has been forced upon the employee by economic necessity. In the first instance, assumption of risk should remain a defense; in the latter it should not." *Id.*

Subsequent to the Supreme Court's decision in *Cremeans*, supra, the Ohio General Assembly passed the Products Liability Act, Ohio Rev. Code 2307.71 - 2307.80. The Supreme Court had occasion to consider its *Cremeans* reasoning in light of the Products Liability Act in 1997. In *Carrel v. Allied Products Corp.*, the court adopted Justice Brown's *Cremeans* concurrence's "focus on the voluntariness of the employee's behavior." 78 Ohio St. 3d 284, 290 (1997). The court held that "in a products liability case, assumption of the risk may be a viable defense against an employee injured by a defective product in the workplace." *Id.* The court differentiated between situations in which the defense would or would not be applicable. "An employee will be deemed to have voluntarily exposed himself or herself to a risk when he or she has elected to use a defective product. However, the defense of assumption of the risk is not available when the employee is required to encounter the risk while performing normal job duties." *Id.*

In applying the law to the facts of *Carrel*, the Supreme Court determined it appropriate to send the question of the applicability of assumption of the risk to the jury where evidence showed that, on one hand, the employee had been trained in adjusting the dies on a transfer press and was aware that he should pull the safety cord when adjusting them, while on the other hand, barrier guards on the press would have prevented the injury, barrier guards were available when the press was designed and were used on other models of the manufacturer's presses, and the plaintiff was not aware that his co-worker would activate the press while the plaintiff was adjusting the press dies. *Id.* at 290-91.

8

> [The plaintiff] testified that his co-worker observed him working in the die space. Further, he did not anticipate that his co-worker would activate the press without being told to do so.  Thus, there is a question as to whether [the plaintiff] appreciated the full danger of the press.  In light of this evidence, a reasonable jury could determine that appellant did not appreciate or voluntarily encounter the risk associated with the press.

*Id.*

In the case before this Court, there is evidence that Wade was trained on the Quanta and was aware to some extent of the dangers of operating it, and that fixed metal bolt-on belt guards were available and used on other models.  Furthermore, Defendant acknowledges that it was a duty of Plaintiff's job "to maintain and grease the concrete cutting saws the company used[,] and [P]laintiff eventually became the designated trainer of new employees." Def. Br., Doc. 180, at 2.  Diamant Boart does not argue that it was not Wade's employment duty to perform maintenance on the Quanta, but rather only that Wade did so without reading the instruction manual.  However, Wade testified that he knew that encountering the belt and pulley point would be dangerous, but that he did not realize it would lead to his losing a hand.  Therefore, there is a question of whether Wade "appreciated the full danger of the press," as was the case in *Carrel*.  *Carrel*, 78 Ohio St. 3d at 291.  Thus, in accordance with the Supreme Court of Ohio's decision in *Carrel*, this Court finds that there are genuine issues of material fact with regard to the assumption of the risk defense and whether it is applicable in this case.  Therefore, Wade's motion for summary judgment on assumption of the risk is denied, so that a trial may reveal whether Wade voluntarily exposed himself to the risk under Ohio law or was required to do so as part of his job.[2]

---

[2] The parties do not argue over whether the assumption of the risk defense applies in this case, but rather whether it is available in product liability cases in the first instance.  The Court finds that the
(continued...)

**C. Punitive Damages**

Because the Court does not herein find liability against either party, it considers it prudent to refrain from issuing a ruling on punitive damages until trial when a determination has been made with regard to liability. The propriety of punitive damages in this matter shall remain an issue for consideration at the trial of this cause.

**IV. Conclusion**

For the reasons explained herein, and in the Sixth Circuit's opinion, Defendant's motion for summary judgment (Doc. 180) and Plaintiff's motion for partial summary judgment with regard to assumption of the risk (Doc. 181) are hereby denied.[3]

A telephone status conference is set for Monday, May 21, 2007 at 9:15 a.m.

IT IS SO ORDERED.

                                                 s/ *David A. Katz*
                                                DAVID A. KATZ
                                                U. S. DISTRICT JUDGE

---

[2](...continued)
defense of assumption of the risk is *available* as a matter of law, but whether it is *applicable* to this case is a matter of fact that is neither sufficiently briefed by either party nor clear enough to warrant summary judgment.

[3] Defendant has also sought to revive a motion for exclusion of the testimony of one of Plaintiff's witnesses that Defendant made before this Court's June 17, 2005 grant of summary judgment (which declared the motion moot) and well before the Sixth Circuit's June 26, 2006 partial reversal and remand. That issue is no longer properly before the Court, although it may be raised in a renewed motion for a *Daubert* hearing, to be requested not later than sixty (60) days prior to trial.